[Civ. No. 2212. Fifth Dist. June 19, 1974.]

JOHN EDWARD EBEL et al., Petitioners, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
JUDSON M. GROSVENOR et al., Real Parties in Interest.

## COUNSEL

Vizzard, Baker, Sullivan, McFarland & Long and Allan H. McFarland for Petitioners.

No appearance for Respondent.

Noriega, Clifford, Jenkins, Stanton & Brown, James E. Brown and Joseph Noriega for Real Parties in Interest.

## OPINION

GARGANO, J.—■ This litigation presents a single issue; does the plaintiff in a personal injury action for damages, who had been ordered to submit to a medical examination by a doctor selected by defense counsel, have the unconditional right to tape record all conversations which take place at the doctor's office during the examination?

The facts are undisputed. On July 6, 1970, petitioners instituted an action in the Superior Court of Kern County (Kern County action No. 110503) against real parties for damages resulting from injuries sustained in an automobile accident; petitioners were represented by Attorney Allan H. McFarland. Thereafter, issue was joined on the complaint and the cause was set for jury trial.

On February 6, 1973, real parties noticed a motion in the superior court for an order requiring John Ebel, one of the plaintiffs in the personal injury action, to submit to a physical examination by Dr. Mortimer Iger, an orthopedist. This motion was granted on February 16, 1973; the court order required Mr. Ebel to submit to the examination on February 23, 1973, at Dr. Iger's office in Bakersfield, California.

On February 23, 1973, John Ebel appeared at Dr. Iger's office with R. T. Brown, an investigator employed by Mr. McFarland. The investigator was carrying a Sony Model TC-110 portable tape recorder, and he told Dr. Iger that he planned to be present during the medical examination and that he was going to record the proceeding. The doctor said that he did not wish to be recorded, and Brown explained that he was "a direct agent" of Mr. McFarland. The doctor stated that he had no objection to the investigator's presence so long as he did not use the recorder. Then, when Dr. Iger refused to permit Brown to record the proceeding, Ebel declined to submit to the examination.

On March 15, 1973, real parties noticed a motion to dismiss petitioners' complaint in the personal injury action and for other sanctions; the motion was based on John Ebel's refusal to submit to a physical examination by Dr. Iger and was heard the following day. At the hearing, petitioners took the position that Ebel could have the medical examination tape recorded without prior court approval and that Ebel's refusal to submit to the examination when the doctor refused to permit the tape recording was justified.

Real parties' motion for sanctions was granted by the court on March 16, 1973; the court ordered the cause off calendar until such time as plaintiff John Ebel submitted to the medical examination. The court also ordered petitioners to pay Dr. Iger's $50 fee and real parties' attorney's fees in the amount of $150. Petitioners have petitioned this court for a writ of mandate directing the lower court to set aside its order imposing sanctions and to allow petitioners to go to trial on the issues framed by the pleadings. Petitioners rely on *Sharff* v. *Superior Court,* 44 Cal.2d 508 [282 P.2d 896, 64 A.L.R.2d 494] and *Gonzi* v. *Superior Court,* 51 Cal.2d 586 [335 P.2d 97], and because we were confronted with a fundamental question, we issued an order to show cause under the authority of these decisions.[1]

The *Sharff* and *Gonzi* decisions lend support to the proposition that a plaintiff who has been ordered by a court to submit to a medical examination by the defendant's doctor may tape record the proceeding. In *Sharff,* the court stated that because the injured party can be subjected to extensive and even improper interrogation, he is entitled to the presence of his lawyer during the examination. In *Gonzi,* the rule was extended to the presence of a reporter; the high court explained that if the injured plaintiff ". . . is not permitted to have a reporter present . . . there is no disinterested

---

[1] We note that the court's order, insofar as it purports to impose sanctions against petitioner Nellie E. Gillespie, the coplaintiff in the superior court personal injury action, was improper. The point is not raised in this proceeding, and we do not reach it.

person present to report, or later testify to, what occurred during the examination." (*Gonzi* v. *Superior Court, supra,* 51 Cal.2d 586, 589.) Clearly, if the purpose for allowing the presence of a reporter during a court-ordered medical examination is to make certain that the injured plaintiff will have an accurate and complete record of the proceeding, the use of any mechanical device capable of attaining the same objective is permissible.

We do not agree, however, with petitioner's assertion that the right to use such a device when objected to does not require prior court approval. It is common knowledge that tape recorders, particularly when manipulated by inexperienced operators, can be very disruptive. It is also common knowledge that recording tapes can be edited or "doctored" to the extent that the material contained therein is inaccurate and even deceptive. Consequently, equity and fairness require that the right of the injured plaintiff to use a tape recorder or any other mechanical device during the court-ordered medical examination be subject to prior court approval so that the court may prescribe guidelines and conditions to safeguard the rights of the parties and to insure orderly procedure in the administration of justice. For example, the court should make certain that the recording device to be used is accurate and nondisruptive. The court also could impose conditions to minimize unnecessary interference with the medical examination, require that the recording device be operated by a disinterested person, and provide that copies of the transcription of the recording be furnished to all interested parties who desire a copy.

To declare that litigants may not use tape recorders or similar devices during court-ordered medical examinations, we would have to ignore the mechanical age in which we live and take a step backward into the 19th Century. But, were we to decree that such litigants have the unqualified right to use tape recorders and other devices operated by their own investigators or persons having a stake in the litigation, we would be adopting a rule which could flood our overburdened trial courts with unnecessary, time-consuming side skirmishes. The middle course not only is preferable, but it comports with the provisions of section 2032 of the Code of Civil Procedure which state that the order compelling the injured party to submit to a medical examination ". . . shall specify the time, place, manner, *conditions,* and scope of the examination . . . ." (Italics added.)

The case of *Gonzi* v. *Superior Court, supra,* 51 Cal.2d 586, does not compel a different conclusion. In that case, the lower court had denied the plaintiff's application to have a reporter present during the court-ordered medical examination by defendant's doctor. In holding that the plaintiff

was entitled to the presence of a reporter, the Supreme Court did not state that prior approval was not necessary nor did it suggest that the trial judge could not prescribe reasonable guidelines for the use of a reporter; if anything, the court indicated the contrary when it said at page 589: "It appears to us that orderly procedure in the administration of justice requires that *permission be granted at the request of either party for a reporter's presence* in such a situation as is here presented. We are of the opinion, however, that petitioner is not entitled *to a court order* directing that her physical examination be conducted in the presence of a 'certified court reporter' inasmuch as the orderly procedure in the administration of justice requires only that such an examination be conducted in the presence of a reporter *if a report thereof is requested by either party*." (Italics added.)

For the reasons delineated herein, John Ebel did not have just cause to refuse to submit to the court-ordered medical examination by Dr. Mortimer Iger, and the court properly imposed sanctions against him. Because Ebel did not make an application for the use of a tape recorder, the sanctions imposed by the court were reasonable. (*Fairfield* v. *Superior Court,* 246 Cal.App.2d 113, 120 [54 Cal.Rptr. 721]; *Fred Howland Co.* v. *Superior Court,* 244 Cal.App.2d 605, 610 [53 Cal.Rptr. 341]; *Caryl Richards, Inc.* v. *Superior Court,* 188 Cal.App.2d 300, 304 [10 Cal.Rptr. 377].)

The writ is denied.

Brown (G. A.), P. J., and Franson, J., concurred.

A petition for a rehearing was denied July 19, 1974, and the opinion was modified to read as printed above.